NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN STALLWORTH, | Hon. Harold A. Ackerman |
| Plaintiff, | Civil Action No. 05-202 (HAA) |
| v. | **OPINION AND ORDER** |
| REHEIS CO., JOHN FLYNN, and CHRIS MILLER | |
| Defendants. | |

John Stallworth
4108 Townhouse Rd.
Apt E
Richmond, VA 23228
(804) 433-8362
*Pro se Plaintiff*

William R. Horwitz, Esq.
SILLS CUMMIS EPSTEIN & GROSS, P.A.
One Riverfront Plaza
Newark, NJ 07102-5402
*Attorneys for Defendants*

**ACKERMAN, Senior District Judge:**

This matter comes before the Court on an unopposed motion for summary judgment (Docket No. 32) filed by Defendants. *Pro se* Plaintiff John Stallworth has alleged various discrimination, tort and contract claims against his former employer, Reheis, Inc., improperly pled as "Reheis Company," and former supervisor, Jon Flynn, improperly pled as "John Flynn,"

1

(collectively, the "Reheis Defendants").[1]  For the following reasons, the motion for summary judgment will be GRANTED as to claims arising under federal law, and the state law claims will be DISMISSED without prejudice.

*Background*

The following factual discussion is drawn from Reheis's Statement of Material Facts and is supported by the submitted evidence, which includes Stallworth's deposition.  Stallworth, who has not opposed this motion, has not submitted a Statement of Material Facts.[2]

Stallworth was employed by Reheis at its manufacturing plant in Berkeley Heights, New Jersey from June 23, 1997 until January 3, 2005.  (Reheis Defs.' L. Civ. R. 56.1 Statement of Material Facts ("SMF"), ¶¶ 1, 39.)[3]  While employed, Stallworth was involved in the process of manufacturing chemicals for use in vaccines, antacids, and antidepressants.  (*Id*. ¶ 3.)

Stallworth started his employment as a press operator, a position in which he was responsible for filtering used chemicals through a press that cleaned the chemicals and formed

---

[1] John Stallworth attempted to serve former Reheis employee and named Defendant Chris Miller at the Reheis plant on or around June 2, 2005.  However, Miller has not been employed by Reheis since October 1, 2004 – more than three months before Stallworth's termination on January 3, 2005.  Such attempt at service of process is not "reasonably calculated" to succeed and therefore does not comport with due process requirements.  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also* Fed. R. Civ. P. 4(e).

[2] Because Stallworth has failed to respond to the Reheis Defendants' SMF as required by Local Civil Rule 56.1, the Defendants' SMF is deemed admitted.  *See Hill v. Algor*, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000) ("[F]acts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted").

[3] Stallworth was fired via a letter sent to his residence.  The letter was dated January 19, 2005, but stated that his termination was "effective January 3, 2005."  (Horwitz Certif., Ex. 11.)

them into solid cakes for shipment. (*Id.* ¶ 9.) In December 1997, he received a written warning for failing to add a "required drying agent to drums of chemicals that were being shipped to a customer." (*Id.* ¶ 18.) After a stint performing custodial duties, he was promoted in approximately January 1999 to the position of Chemical Operator, a position he held for the remainder of his employment. (*Id.* ¶ 12.) In this position, he operated a reactor that mixed, heated and cooled ingredients to produce batches of chemicals. (*Id.* ¶ 13.) He was responsible for transferring the materials into the appropriate filter or storage tank and recording the steps he took in so doing. (*Id.* ¶ 16.)

As Chemical Operator, Stallworth was reprimanded several times. He received his second written warning on June 6, 2003, for transferring a batch of chemicals into the wrong reactor, which already contained a batch of different chemicals. (*Id.* ¶ 20.) He received his third written warning on August 25, 2004, when he misdirected 11,000 pounds of chemicals into a reactor, causing "considerable delays." (*Id.* ¶ 23.) Two days later, Defendant Jon Flynn investigated a low pH level at the effluent plant, where waste that flows down the drain from the main plant is received and treated. After determining that nothing at the effluent plant was the cause of the low pH, Flynn determined that Stallworth caused the low pH by spilling between "2,000 and 3,000," pounds of chemicals down the drain at the main plant. (*Id.* ¶ 26.) Because of this incident, Stallworth was indefinitely suspended on September 1, 2004. (Horwitz Certif., Ex. 8.)

Stallworth disagrees with Flynn's finding, claiming that the meter from which Flynn was reading was broken. (Pl.'s Dep. 138:5-9.) Stallworth submitted a letter to management dated October 6, 2004, in which he referred to himself as a plaintiff (although he had not filed a lawsuit

3

at that time), alleging that Reheis and Flynn had committed a variety of civil offenses against him, and offering a $10,000 settlement. (Horwitz Certif., Ex. 12.) Meanwhile, through his union, Teamsters Local 97 of New Jersey ("Local 97"), Stallworth filed a grievance regarding the suspension. (Reheis Defs.' SMF ¶ 28; Horwitz Certif., Ex. 13.) This resulted in a meeting at which Stallworth was reinstated to his position upon signing a "Return to Work Agreement." (Horwitz Certif., Ex. 9.) Stallworth, the Human Resources Manager for Reheis, and a Local 97 representative all signed the agreement on October 7, 2004. The terms of this agreement did not mention a requirement of "good cause" for termination, but rather that "[f]ailure to maintain [Stallworth's] work performance at an acceptable level will result in termination of his employment. No future spills will be tolerated. . . . [F]ailure to comply with all the terms of the agreement will result in immediate termination." (*Id.*)

On January 2, 2005, Stallworth left a tank valve in the "off position." Stallworth claims he did so on implied directions from an engineer. (Pl.'s Dep. 201:3 to 202:4.) As a result of the switch being left in this position, 7,000 pounds of aluminum chloride product spilled onto the plant floor. (Horwitz Certif., Ex. 11.) On January 4, 2005, the plant suspended Stallworth "pending investigation of this incident," and on January 19, 2005, the plant terminated Stallworth's employment effective January 3, 2005. (Horwitz Certif., Ex. 10, 11.)

Mindful that a *pro se* plaintiff's pleadings must be construed liberally, the Reheis Defendants articulated several legal claims that they reasonably believe Stallworth is asserting in his Complaint. Those claims, as articulated by the Reheis Defendants, are as follows: (1) violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; (2) age discrimination; (3) retaliation for complaining about discrimination;

(4) breach of the Collective Bargaining Agreement ("CBA") between Reheis and Local 97; (5) breach of the CBA's implied covenant of good faith and fair dealing; (6) the tort of intentional infliction of emotional distress; and (7) harassment.

This Court too is mindful that the Plaintiff is proceeding *pro se*, and we therefore must construe his Complaint liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("A *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks and citations omitted)); *see also* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). Thus, although the Reheis Defendants did not counter the following arguments directly, the Complaint might reasonably be construed also to aver the following: (8) race discrimination (Compl. ¶ 9); (9) hostile work environment (Compl. ¶¶ 13, 15); (10) violations of the Conscientious Employee Protection Act ("CEPA") (Compl. ¶ 14); (11) unpaid wages (Compl. ¶¶ 11, 12); and (12) defamation. (Compl. ¶ 8.) The court will address these claims seriatim.

*Analysis*

**A. Summary Judgment and Failure to Respond**

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); *see also Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989); *Chipollini v.*

*Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987). Summary judgment may be granted only if the movant shows that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). A fact is material if it influences the outcome under the governing law. *Id.* at 248; *see also Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985).

  The substantive law will identify which facts are "material." *Anderson*, 477 U.S. at 247-48. Therefore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *Id.* A district court faced with a summary judgment motion must view all evidence and the inferences to be drawn therefrom in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994). It is inappropriate for a district court to resolve factual disputes or make credibility determinations at the summary judgment stage. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Indeed, "where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Id.*

  This does not mean, however, that a district court may ignore the weight of the evidence. *Id.* "[I]f the non-movant's evidence on any essential element of the claims asserted is merely 'colorable' or is 'not significantly probative,' the court should enter summary judgment in favor

of the moving party." *Peterson v. Am. Tel. & Tel. Co.*, Civ. A. No. 99-4982, 2004 WL 190295, at *3 (D.N.J. Jan. 9, 2004) (quoting *Anderson*, 477 U.S. at 249). Therefore, to raise a genuine issue of material fact, the summary judgment opponent "'need not match, item for item, each piece of evidence proffered by the movant,' but simply must exceed the 'mere scintilla' standard." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant].").

Here, Stallworth has not responded to the Reheis Defendants' summary judgment motion. He has submitted no evidence or statement of facts. However, Local Civil Rule 56.1 requires a statement of material facts to be set forth by both sides.[4] The Third Circuit has determined that in such a situation, the party that fails to respond thereby admits to the facts set forth in the moving party's statement, at least to the extent that they are not contradicted by the evidence provided by the moving party:

> The rule means that the opposing party, by failing to file a written objection and memorandum as required by the rule, waives the right to controvert the facts asserted by the moving party in the motion for summary judgment and the supporting material accompanying it.

*Anchorage Assoc. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990).

But a failure to reply does not warrant an automatic grant of summary judgment. *Id.* "If the adverse party does not respond, summary judgment, *if appropriate*, shall be entered against the adverse party." Fed R. Civ. P. 56(e) (emphasis added). Thus, there must still be an

---

[4] "On motions for summary judgment, each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1.

evaluation of whether summary judgment is "appropriate" pursuant to the standards of Rule 56. *Anchorage Assoc.*, 922 F.2d at 175.

**B. Federal Law Claims**

    (1) Equal Protection

As a threshold matter, an equal protection claim cannot be maintained unless the defendants are acting "under color of any statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. The "color of state law" element requires that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). There are three ways a defendant can be considered a state actor under Section 1983: (1) the defendant is a state official; (2) the defendant "acted together with or has obtained significant aid from state officials"; or (3) the defendant's "conduct is otherwise chargeable to the State." *Id*.

Reheis, Inc. and Flynn are not state actors within any of the above categories. Reheis is a private chemical maker and a wholly owned subsidiary of General Chemical Performance Products, LLC. (Macmanus Certif., ¶¶ 3-4.) Flynn is a Reheis employee. (Pl.'s Dep. 49:17-24.) Nowhere in his Complaint or deposition has Stallworth made any accusation of state action, nor can this Court divine any nexus between Reheis and Flynn to any action or conduct that may reasonably be charged to the state. Accordingly, the Reheis Defendants are not state actors, and are not liable under Section 1983 as a matter of law.

8

(2) Title VII Violations

Stallworth's Complaint alleges that the Reheis Defendants were responsible for racial discrimination in violation of Title VII through "disparate treatment and retaliation." (Compl. ¶ 9.)[5]  Although "disparate treatment" and "retaliation" are two separate allegations, they would both classify as actions under Title VII of the Civil Rights Act of 1964.  42 U.S.C. § 2000e. However, a plaintiff cannot file suit against an employer under Title VII without first filing a charge with the Equal Employment Opportunity Commission ("EEOC").  42 U.S.C. § 2000e-5. The Third Circuit has explained this requirement:

> The jurisdictional prerequisites to a suit under Title VII are the filing of charges with the EEOC and the receipt of the Commission's statutory notice of the right to sue.  These preliminary steps are essential parts of the statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action. While preliminary requirements for a Title VII action are to be interpreted in a nontechnical fashion, the aggrieved person is not permitted to bypass the administrative process.

*Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976) (citations omitted); *see also Atkinson v. Lafayette Coll.*, 460 F.3d 447, 453 (3d Cir. 2006) ("Generally, before filing a Title VII suit, an employee must file a complaint with the EEOC to attempt to resolve the dispute before involving litigation.").  Therefore, Stallworth cannot avail himself of judicial remedies under Title VII because he has not filed anything with the EEOC.  (Pl.'s Dep. 24:2-16.)

---

[5] In pertinent part, the Complaint reads: "When Mr. Stallworth opposed what he believed was an unfair labor practice the Defendants [sic] adverse retaliatory discharge/suspension as well as continued harassment was based in part because [sic] of race."  (Compl. ¶ 9.)  Construing this *pro se* Complaint as favorably as Rule 8(a) permits, it appears that Stallworth is alleging that the retaliation was motivated by race.

### (3) ADEA Violations

Stallworth alleged age discrimination at his deposition. (Pl.'s Dep. 203:6-12, 258:25 to 259:5.)  However, Stallworth does not allege age discrimination in his Complaint; the word "age" does not appear anywhere in the Complaint.  He has not attempted to amend his Complaint to include these new allegations.

Federal Rule of Civil Procedure 8(a)(2) requires the Complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A court need not entertain claims that are not pled in the Complaint.  *See Knabe v. Boury Corp.*, 114 F.3d 407, 408 n.1 (3d Cir. 1997); *see also Hyman v. Atl. City Med. Ctr.*, 1998 U.S. Dist. LEXIS 3416 at *38 n.8 (D.N.J. 1998) ("Where a plaintiff fails to plead a claim of retaliatory discharge in the complaint and does not attempt to formally amend the complaint to include the claim at a later date, courts will not consider it."); *Porzilli v. CBS, Inc.*, 1998 U.S. Dist. LEXIS 10689 at *6 n.6 (D.N.J. 1998) ("It is not incumbent on the Court to address any additional claims not included within the scope of the Complaint or the pleadings in the current litigation.").  Thus, Stallworth's failure to allege age discrimination in a complaint or amended complaint is sufficient reason to dismiss any claims against the Reheis Defendants alleging violations of the Age Discrimination in Employment Act ("ADEA").

Even if Stallworth's Complaint could be construed to include such a claim, there are separate grounds on which to dismiss this claim.  As with Title VII claims, in order to sustain a claim under the ADEA, a plaintiff must have first exhausted administrative remedies, and only thereafter may that plaintiff commence a civil suit.  29 U.S.C. § 626(d) ("No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful

discrimination has been filed with the Equal Employment Opportunity Commission"); *see also Alston v. Atl. Elec. Co.*, 962 F. Supp. 616, 625 (D.N.J. 1997).  Stallworth has not filed any charges with the EEOC.  (Pl.'s Dep. 24:2-16, 24:25 to 25:4.)  Accordingly, the Reheis Defendants are entitled to summary judgment on this claim.

**C. State Law Claims**

In his Complaint, Stallworth has alleged various state law claims, including violations of the New Jersey Law Against Discrimination ("NJLAD") through retaliation, a hostile work environment, and discrimination; a violation of CEPA; breach of the express terms of the CBA and its implied covenant of good faith and fair dealing; intentional infliction of emotional distress; retention of unpaid wages; and defamation.  However, because this Court will dismiss the federal claims (Equal Protection, Title VII, and ADEA), this Court need not reach these supplemental claims.  "Where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction.").

Expiration of the various statutes of limitations on the state law claims might present a problem of fairness.  The Court recognizes that the statutes of limitations on most of Plaintiff's state claims appear to have run.  N.J. Stat. Ann. § 34:19-5 (a one-year limitation for CEPA

claims); N.J. Stat. Ann. § 2A: 14-2 (a two-year limitation for tort claims); N.J. Stat. Ann. § 2A: 14-3 (a one-year limitation for defamation claims); N.J. Stat. Ann. § 2A:14-1 (a six-year limitation for contract claims); *Montells v. Haynes*, 133 N.J. 282 (1993) (holding that there is a two-year limitation on all NJLAD claims filed after 1993).  However, Congress foresaw and expressly remedied this problem when it codified the law of supplemental jurisdiction:

> The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d).  The Third Circuit addressed this precise situation and affirmed a district court's decision to not exercise supplemental jurisdiction after dismissal of the claims over which it had original jurisdiction because, due to Section 1367(d), "[p]laintiff's state claims were . . . not time-barred at the time the District Court dismissed them."  *Hedges v. Musco*, 204 F.3d 109, 123-24 (3d Cir. 2000); *see also Green v. Fund Asset Mgmt., L.P.*, 147 F. Supp. 2d 318 (D.N.J. 2001).  Thus, pursuant to Section 1367, this Court may dismiss the state law claims without prejudice.

## *Conclusion & Order*

For the foregoing reasons, Defendants' motion for summary judgment (Docket No. 32) is hereby GRANTED on all of Plaintiff's claims under federal law.  Plaintiff's supplemental state law claims are hereby DISMISSED without prejudice.  The Clerk shall mark this case CLOSED.


Newark, New Jersey
Dated: June 27, 2007                                        /s/ Harold A. Ackerman
                                                                       U.S.D.J.